(May 9, 1991)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EFRAIN OLMO, Appellant.—Judgment, Supreme Court, Bronx County (Ivan Warner, J.), rendered January 30, 1985, convicting defendant, upon a jury verdict, of robbery in the first degree, robbery in the second degree, burglary in the first degree and burglary in the second degree, and sentencing him to indeterminate terms of imprisonment of from seven to twenty-one years, five to fifteen years, seven to twenty-one years and five to fifteen years respectively, unanimously reversed, on the law, the facts and as a matter of discretion in the interest of justice, the motion to suppress is granted, the conviction is vacated and the matter is remitted for a new trial.

This appeal was held in abeyance and the matter was remitted for a new *Wade* hearing to determine whether defendant was denied due process by the lineup procedures conducted in this case.

Defendant was accused of forcing his way into the home of Roggiello Rodriguez with an armed companion in October of 1983 and of forcing Rodriguez and his son John to lie on the floor while he and his companion ransacked the apartment.

After being shown a photo array by the police, the elder Rodriguez picked out a photograph depicting the taller man involved in the robbery while his son chose a photo of defendant, who was described as the shorter of the two men. Both men identified defendant at subsequent lineups.

Defendant had also been charged with another robbery. On the same day that the Rodriguezes identified defendant at the lineups, the victim in that case, Paulette McCoy, also identified defendant at a lineup.

At the initial *Wade* hearing and trial of the instant case, conducted in January and February of 1985, Detectives Bonan and Young testified that the Rodriguezes and McCoy were transported separately to the station house to view the lineups on December 13, 1983. Young added that he did not discuss defendant or the lineup procedures with the Rodriguezes.

At the *Wade* hearing conducted in February of 1985 with regard to her complaint, Paulette McCoy testified that the police drove her and the Rodriguezes to the precinct in the same vehicle. She also stated that on the way to the precinct, she and the Rodriguezes exchanged information regarding the facts of their cases and that she told them that their description of the man who robbed them matched the description of the man who had robbed her. She added that Detective Bonan then told them that the same person was a suspect in both cases. He also purportedly told McCoy after the lineup that she had picked out the same person that the Rodriguezes had identified.

The instant case was remitted for a new *Wade* hearing on the basis of McCoy's testimony, which, given the fact that identification was the central issue in the case, was found to have undermined the validity of the out-of-court identifications of defendant. McCoy's testimony created a doubt as to the credibility of the detectives.

At the conclusion of the "new" *Wade* hearing, the Supreme Court rejected defendant's contentions that he was denied due process by the prosecutor's knowing use of perjured testimony and that the lineup procedures were tainted by communications between the complainants while transported to the precinct. The court therefore adhered to its original ruling denying defendant's motion to suppress the out-of-court identifications made by Roggiello Rodriguez and his son.

We agree with defendant's contention that the Supreme Court erred in denying his motion to suppress evidence regarding the lineup identifications. Nor can the erroneous

admission of the lineup evidence at the trial of this matter be deemed harmless beyond a reasonable doubt *(see, People v Jackson,* 74 NY2d 787; *People v Crimmins,* 36 NY2d 230; *People v Thomas,* 155 AD2d 706, *affd* 76 NY2d 902) since identification was the only significant issue at defendant's trial, and two of the prosecution's chief witnesses, police officers, were subject to serious impeachment *(People v Jackson, supra).* While an independent source was established for the complainants' in-court identification of defendant as the Supreme Court found at the conclusion of the initial *Wade* hearing *(cf., People v Jackson, supra),* under the circumstances presented, a new trial is warranted.

Shortly after defendant was convicted on the Rodriguez complaint, the *Wade* hearing was conducted in the McCoy robbery case. McCoy was unequivocal in testifying that Detective Bonan drove her to the precinct on December 13, 1983 to view a lineup and that Detective Young was also in the car as were both Roggiello and John Rodriguez. She told the Rodriguezes "what happened to me and they talked about what happened to them" as they sat together in the back seat of the car. She stated that Bonan told her that the person who had robbed her had also robbed the Rodriguezes. The officers also told the victims that defendant would "get what he deserves."

McCoy further testified that after she identified defendant at the lineup, she was brought into a room with the Rodriguezes where they remained for some time. She told the Rodriguezes, who had not yet viewed the lineup, that she had picked someone out and also told them the number he had been assigned.

Pursuant to this court's order, a new *Wade* hearing was held on March 30, 1990, more than six years after the lineups were conducted. Neither Roggiello nor John Rodriguez testified, as Roggiello had been the victim of a homicide and attempts to locate John were unsuccessful. Detective Young testified that he remembered being alone in the car when he picked up the Rodriguezes to drive them to the lineup but could not recall whether McCoy was taken to the precinct with them. After the lineups, however, he transported McCoy and the Rodriguezes to court in the same car. Young added that he discussed the facts of both of defendant's cases, including the circumstances surrounding the lineup procedures conducted, with the prosecutor approximately ten times prior to trial. When they interviewed McCoy, she never told them that she had discussed her case with the Rodriguezes.

Detective Bonan stated that he drove McCoy to the lineup

and that they were alone in the car. He also disputed McCoy's testimony that she had been placed in the same room as the Rodriguezes at the precinct prior to the Rodriguezes' viewing of the lineups. He claimed that the Rodriguezes viewed the lineups before McCoy. He also stated that he and Detective Young drove all the complainants home later that day.

At the "new" hearing, McCoy changed her testimony and stated that Detective Bonan picked her up and drove her to the precinct and that they were alone in the car. She still maintained, however, that she met the Rodriguezes prior to viewing the lineup although she did not recall the conversation. She then corroborated the officers' testimony that on the way home, she was in the car with the two detectives and the Rodriguezes and that it was then that they discussed the circumstances of their robberies. When confronted with her previous testimony, McCoy claimed that although she stated that she rode to the precinct in the same car as the Rodriguezes, she might have been mistaken.

The People's application to have the prior sworn testimony of John and Roggiello Rodriguez admitted into evidence was granted. Roggiello testified that Bonan and Young picked him and his son up and drove them to the precinct to view lineups. John added that on the way, one of the officers told him that the person he had previously identified from photographs had been apprehended. Neither witness was asked about nor mentioned Paulette McCoy.

It is well-established that the People have the burden of going forward to establish the reasonableness of the police conduct and the lack of suggestiveness of the pretrial identification procedure while defendant bears the ultimate burden of proof to establish that a pretrial identification procedure was unduly suggestive *(People v Berrios,* 28 NY2d 361; *People v Jackson,* 108 AD2d 757). The testimony of the witnesses at the "new" *Wade* hearing is subject to serious impeachment and still casts doubt on whether McCoy and the Rodriguezes were transported separately to and kept apart from each other at the precinct.

McCoy's testimony at the "new" *Wade* hearing was, as the Supreme Court found, equivocal. She apparently retreated from her initial testimony that she rode to the precinct with the Rodriguezes. However, her testimony at the first hearing, which was held much closer in time to the event in question, was detailed and precise. Her testimony was more hesitant at the more recent hearing. While she stated that she may have

been mistaken when she testified initially to being driven to the precinct with the Rodriguezes, at the "new" hearing, it should be noted that defendant had been acquitted in the trial of her complaint before she testified at the "new" hearing. Questioning concerning any bias on her part or motive to change her story at the "new" hearing was precluded by the court.

While the Supreme Court and the People attribute the purported mistake in her initial testimony to her illness (she suffers from multiple sclerosis), there is nothing in the record to indicate that the illness affects her memory. It is clear that the witness' testimony at the initial hearing bears more indicia of reliability given the fact that it occurred closer in time to the event in question and given her lack of motivation to fabricate at that time. Defendant's contention that the circumstances surrounding the lineups conducted in this case rendered the procedure suggestive was based on more than mere speculation (cf., People v Flowers, 150 AD2d 721, lv denied 74 NY2d 809; People v Morales, 134 AD2d 292, lv denied 70 NY2d 935). Accordingly, the evidence of the lineup identifications made by the Rodriguezes should have been suppressed.

At the conclusion of the initial Wade hearing in this matter, the court held that the pretrial identification procedures employed by the police were not unduly suggestive. The court went on to note, however, that even if the procedures were suggestive, both Roggiello and John Rodriguez had sufficient time and opportunity to observe the perpetrator at the time of the incident to establish an independent source for their in-court identification. Based on this ruling, the Rodriguezes testified at trial as to their lineup identifications.

Even though we agree with the court's finding of an independent source for the witnesses' in-court identifications, because of the questions raised concerning the credibility of the police officers, the introduction of testimony concerning the lineups which we find suggestive and the fact that identification was a central issue in the case, defendant is entitled to a new trial.

In light of the foregoing, and the conflicting testimony regarding the prosecutor's actions, we do not reach defendant's remaining contentions. Concur—Murphy, P. J., Carro, Milonas and Rosenberger, JJ.