*480 OPINION OF THE COURT
Gabrielli, J.
These four appeals present the common question whether a suspect has a right to counsel at an investigatory lineup. In each case, we are urged by the defendant to interpret our State Constitution as providing this right at lineups conducted before the commencement of formal adversarial proceedings against a defendant.
I
In People v Laffosse, the defendant was convicted of robbery in the second degree for his part in the robbery of an off-duty police officer by three males. Laffosse was apprehended after the officer had selected his picture from a photo array. Once at the station house, the defendant was advised of his Miranda rights and he then agreed to talk to a detective. During the questioning he requested an attorney, but he and the police were unsuccessful in locating the particular attorney he desired; Laffosse then refused the offer of the police to procure a Legal Aid attorney to represent him. Shortly thereafter, he was informed that he was to be placed in a lineup and, once again, Laffosse refused an offer by the police to obtain the services of a Legal Aid attorney, this time stating that he would not need a lawyer until he went to court. Laffosse subsequently was identified at the lineup by his victim.
In People v Johnson, the defendant was convicted of two counts of murder in the second degree arising from a shooting which occurred during an aborted robbery attempt. Johnson was arrested on the day following the incident, and once at the station house he received preinterrogation warnings, but made no request for counsel. Several hours passed before the police were able to secure the presence of the eyewitnesses to the shooting for the purpose of conducting a lineup. Just before the lineup was about to be held, defendant refused to stand in the lineup and, for the first time, requested the presence of an attorney. Johnson was informed that he had no choice, and the lineup at which he was identified proceeded without counsel.
*481 In People v Hawkins, the defendant was convicted of rape in the first degree, sodomy in the first degree, robbery in the first degree and burglary in the third degree. Hawkins, a stranger to his victim, gained entrance to her apartment by requesting the use of a pen and paper in order to write a message to another tenant in the building. Once inside the apartment, Hawkins committed the several crimes for which he now stands convicted. Immediately after Hawkins left, his victim went to the police and was able to select defendant’s picture from a photo array. Several months later Hawkins was arrested by an officer who had arrested him on a prior occasion for an unrelated drug offense. The arresting officer was aware that the drug charge was still pending against the defendant at the time of his arrest on the rape, sodomy, robbery and burglary charges. Once at the station house he consented to appear in a lineup, without asking for the assistance of counsel. As in the other cases, defendant was then identified by the victim.
In the final case, People v Diaz, the defendant was convicted of sodomy in the first degree, assault in the second degree and attempted sexual abuse in the first degree emanating from his separate attacks on two young boys. The defendant’s identity was discovered when, following the second episode, the police discovered at the scene of the crime a bail bond receipt issued to Diaz following his arraignment on the previous day on charges unrelated to the attacks on the two boys. After the second boy selected his picture in a photo array, Diaz was arrested and placed in a lineup at the station house. Diaz was not represented by counsel at the lineup, and the police did not contact the Legal Aid attorney who represented him at the arraignment on the prior unrelated charges. Both complainants identified Diaz in the lineup as the man who had attacked them.
In each of these four cases the defendant moved to suppress the corporeal identification on the ground that he had been deprived of his right to the assistance of counsel at his lineup. Each lineup in these four cases was conducted before an accusatory instrument had been filed and before an adversary criminal proceeding had commenced. *482 Suppression was denied in each case, and the subsequent convictions were later affirmed at the Appellate Division. We also affirm.
II
Initially, we observe that defendants present no cognizable claim under the United States Constitution to a right to counsel at their lineups, since these lineups occurred prior to the initiation of formal prosecutorial proceedings (see Kirby v Illinois, 406 US 682). The Supreme Court in United States v Wade (388 US 218) held that a person accused of a crime by Federal or State officials is entitled under the Sixth and Fourteenth Amendments to have his attorney present at pretrial lineups. In Kirby v Illinois (supra), however, the court limited that holding and refused to extend this principle to provide a right to counsel at lineups held prior to the initiation of formal prosecutorial proceedings. In reaching this conclusion, the court observed that a person’s Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him (Kirby v Illinois, supra, at p 688). The court went on to indicate that a formal charge, preliminary hearing, indictment, information or arraignment may mark the initiation of such adversary judicial proceedings (supra, at p 689; Brewer v Williams, 430 US 387).[1]
In addition, the plurality opinion in Kirby also noted that the Fifth Amendment protection against self incrimination is not implicated at a preindictment lineup, nor does the Fifth Amendment provide the protection of counsel at this stage. The privilege “ ‘ “protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature” ’ ” (Kirby v Illinois, supra, at p 687, citing United States v Wade, 388 US 218, 221, supra). The *483 court explained its conclusion that the Fifth Amendment provides no right to counsel at this stage by noting that the doctrine of Miranda v Arizona (384 US 436) is inapplicable in the realm of corporeal identifications.[2] The court stated that “the Miranda decision was based exclusively upon the Fifth and Fourteenth Amendment privilege against compulsory self incrimination, upon the theory that custodial interrogation is inherently coercive” (Kirby v Illinois, supra, at p 688). It is now firmly established that the Miranda rule evolved solely as a procedural safeguard to protect the accused’s privilege against compulsory self incrimination (Michigan v Tucker, 417 US 433, 438-439). Accordingly, although Miranda extended the protections of counsel to. an event occurring before the attachment of the Sixth Amendment right to counsel, it did so only in the limited area of custodial interrogations and has no applicability to lineups.
It follows, therefore, that the defendants in the four cases here presented to us had no right to counsel at their lineups by virtue of the United States Constitution. Each lineup occurred before the initiation of formal judicial proceedings and, accordingly, defendants’ Sixth and Fourteenth Amendment right to counsel had not yet attached. Nor did defendants have any right to counsel under the Fifth and Fourteenth Amendments, since the Miranda warnings and protections apply only to custodial interrogations.
Nevertheless, defendants press their contention that the lineup identifications must be suppressed, arguing that our State Constitution should be so interpreted as providing a right to counsel at investigatory lineups.
Ill
On several occasions in the custodial interrogation context this court has extended the protections of counsel afforded to a defendant under our State Constitution beyond those afforded by the United States Constitution. The lifeblood of the New York rule is that once the right to counsel has indelibly attached, the defendant can effec *484 tively waive the protections of counsel only if counsel is present.
Recently, this court has had two opportunities to trace the development of the independent New York rule; once in People v Skinner (52 NY2d 24, 28-30) and again in People v Kazmarick (52 NY2d 322, 326-327). As we have noted, the New York rule has developed along two lines. In the first line, it has been held that a waiver of the protections of counsel by a person against whom formal criminal proceedings have been commenced is ineffective unless made in the presence of counsel (e.g., People v Samuels, 49 NY2d 218; People v Settles, 46 NY2d 154). In the second line, it has been ruled that the nonwaivability rule is applicable to a suspect who is represented by an attorney (e.g., People v Rogers, 48 NY2d 167; People v Hobson, 39 NY2d 479; People v Arthur, 22 NY2d 325). This nonwaivability rule was extended in People v Cunningham (49 NY2d 203), where we found custodial interrogations of an unrepresented individual to be impermissible after that individual has requested the assistance of counsel. Additionally, in People v Bartolomeo (53 NY2d 225) the court held that if the police are aware that a person whom they seek to question has other unrelated charges then pending against him, and that person is in fact represented by counsel in connection with those charges,[3] the individual must be treated as if he is actually represented by counsel on the charges then under investigation. Finally, in People v Skinner (supra), we specified that an individual who had obtained counsel specifically on the matter under investigation may not be interrogated on the very same subject in a noncustodial setting after the individual’s attorney has requested the police not to question the suspect in his absence.
Defendants Laffosse and Johnson, who stood in lineups without the assistance of counsel which they had previously requested, now contend that their corporeal identifications should have been suppressed by parallel reasoning under the authority of this court’s decision in People v *485 Cunningham (supra). Defendants Hawkins and Diaz claim that they had an indelible right to counsel applicable at their lineups by virtue of our decision in People v Bartolomeo (supra), since the police were aware that unrelated charges were then pending against these defendants at the time of their lineups and, in fact, defendants were actually represented by counsel in connection with those prior pending charges. The fundamental error in these arguments is that they misconstrue the nature of New York’s qounsel rule and ignore the reasons for its development.
Much like the Supreme Court’s decision in Miranda, our decisions developing the independent New York counsel rules have arisen simply out of a concern for protecting the individual during interrogations. This court has repeatedly stressed that “[a]bsent the advice of an attorney, the average person, unschooled in legal intricacies, might very well unwittingly surrender [his privilege against compulsory self incrimination] when confronted with the coercive power of the State and its agents” (People v Settles, supra, at p 161, citing People v Hobson, 39 NY2d 479, 485, supra). Thus, our indelible right to counsel rule has developed to ensure that an individual’s protection against self incrimination is not rendered illusory during pretrial interrogation.
Although we have found the assistance of counsel to be of importance during interrogations, we have also noted that counsel plays a much more limited role at identification confrontations (see People v Hobson, 39 NY2d 479, 485, supra). During interrogations, counsel may take an active role on behalf of his client, both in advising a suspect on whether to remain silent and in counseling a suspect on whether to answer particular questions once the right to remain silent has been waived (People v Settles, supra, at p 165). In contrast, during a lineup counsel plays the relatively passive role of an observer (see People v Blake, 35 NY2d 331, 337). Counsel may not actively advise his client during the lineup itself. Indeed, we have gone so far as to state that “the need for and right to a lawyer at an identification lineup is insignificant compared to the need in an ensuing interrogation” (People v Hobson, supra, at p 485).
*486 To be sure, the assistance of counsel is not completely valueless at investigatory lineups (see People v Blake, supra). But that is not the constitutional test of whether it is required. Nor does its value to a suspect provide the full practical and reasonable picture concerning its effect on the other side of the criminal process equation — law enforcement and protection of the community and, indeed, society itself. Before a right to counsel is extended to this investigatory stage, consideration must be given to the serious detriments that emanate from the sought-after requirement of counsel at investigatory lineups. A primary policy consideration is that lineups should be conducted as close in time to the occurrence of the incident under investigation as possible. First, the recollections of a witness may fade as time passes (see People v Blake, supra, at p 337). Second, a prompt identification confrontation will benefit the suspect, both because it may diminish the possibility of a mistaken identification and, further, because it may also permit the release of an innocent suspect with a minimum of delay (see People v Blake, supra, at p 337). Finally, prompt identification confrontations may assist the police in determining whether to continue their search of the vicinity of the crime (see United States v Sanchez, 422 F2d 1198, 1200).[4] These necessary advantages often may be lost if the lineup is required to be delayed.[5]
We conclude that the limited benefits provided by counsel at investigatory lineups are far outweighed by the *487 policy considerations militating against requiring counsel at this stage of the investigatory process. The Constitution does not expressly or even impliedly require it. Accordingly, we find no basis in our State Constitution for requiring counsel at investigatory lineups.
The right to the assistance of counsel at corporeal identifications therefore arises only after the initiation of formal prosecutorial proceedings (Kirby v Illinois, supra). After the accused has been formally charged by indictment, information or complaint,[6] his Sixth and Fourteenth Amendment right to counsel will attach, and a lineup conducted “without notice to and in the absence of his counsel” will be held to violate that right (Kirby v Illinois, supra, at p 683, citing Gilbert v California, 388 US 263, 272). In contrast, the police have no obligation to secure counsel for a suspect who is merely being placed in an investigatory lineup, even when the suspect requests that counsel be provided.
Although we conclude that the State has no obligation to supply counsel at investigatory lineups, we have previously noted that if a suspect already has counsel, his attorney may not be excluded from the lineup proceedings (People v Blake, supra, at p 338). That does not mean, however, that the police must notify counsel of an impending investigatory lineup or that counsel is entitled to a lengthy adjournment at this stage of the investigatory process. In view of the limited benefits which counsel provides at this stage, the police need not suspend the lineup in anticipation of the arrival of counsel if this would cause unreasonable delay. Pertinent to this consideration is whether the delay would result in significant inconvenience to the witnesses or would undermine the substantial advantages of a prompt identification confrontation.
It follows that since the defendants in each of the present appeals were placed in lineups prior to the initiation of *488 formal prosecutorial proceedings, they were deprived of no rights guaranteed by our Federal or State Constitutions by the absence of counsel at this stage. Furthermore, we have considered defendants’ remaining contentions and find them to be without merit.[7]
Accordingly, in each of these four appeals, the order of the Appellate Division should be affirmed.

. Significantly, the court noted that “[t]he initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law” (Kirby v Illinois, supra, at p 689).

. Miranda v Arizona (supra) provides, among other things, that the defendant must be permitted to have an attorney present during custodial interrogations.

. If the suspect is not, in fact, represented by counsel in connection with the prior charge, then the police are not barred from questioning the suspect on the new matter (People v Kazmarick, supra).

. In evaluating the benefits provided by counsel at investigatory lineups, it is important to remember that should a question arise concerning the suggestiveness of the lineup, the resolution of this issue will not come down to a credibility contest between the accused and the police. First, fears about such a credibility contest cynically and improperly assume that the police will misrepresent the lineup scenario. More importantly, however, it must not be forgotten that with each lineup identification there will be an eyewitness who can be examined and cross-examined at the Wade hearing and at the trial as to whether any improper conduct was resorted to. In this sense, lineups are fundamentally different from interrogations and thus the protective devices surrounding each may be different.

. Another important consideration is that a defendant has no constitutional right to refuse to stand in a lineup. He does have a constitutional right, however, to refuse to answer questions. Where the waiver of a constitutional right is involved, the need for counsel’s presence takes on greater importance.

. In People v Samuels (supra) it was held that the right to counsel attaches upon the filing of a complaint, since by statute a criminal action commences with the filing of an accusatory instrument (GPL 1.20, subd 17), which includes a felony complaint (GPL 1.20, subds 1, 8).

. In evaluating the need for counsel at investigatory lineups, we must be mindful of the fact that an identification made at an unduly suggestive lineup may not be introduced into evidence (Kirby v Illinois, supra, at p 691). Thus, the cassandran fear of numerous misidentifications, expressed by the dissent, must be tempered with the notion that adequate constitutional and evidentiary safeguards already attend the conduct of an investigatory lineup. Indeed, as the dissenters note, the majority of State courts have embraced the Kirby rule, indicating that the weight of authority rests with the position the majority takes today. I further comment on the multiple nonjudicial sources employed in the dissent. While I, in no measure, intend disrespect to my dissenting colleagues, to the view they express, nor to academic sources generally, I am constrained to note that some of these proffered authorities do not realistically or legally justify the result for which they are advanced. Thus, no item by item response is warranted. Rather, I find confirmation and support for the majority viewpoint in the judicial decisions and analyses of our court and the Supreme Court of the United States.