■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK MARSHALL, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Goldstein, J., at trial and sentencing; Tsoucalas, J., at suppression hearing), rendered September 21, 1978, convicting him of burglary in the second degree (two counts), robbery in the second degree (four counts), and assault in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial of defendant's motion to suppress certain evidence. Judgment reversed, on the law, motion to suppress granted to the extent indicated herein and new trial ordered. Defendant Frank Marshall was arrested along with another man in Brooklyn on September 9, 1977, after the two allegedly forced their way into the apartment of an elderly couple, beat the elderly woman and shot her husband. On Saturday, September 10, 1977 an article appeared in the *New York Post* reporting the incident. The article contained a photograph of each man and stated that the two were suspected of committing "more than 20 push-in attacks on senior citizens in Brooklyn and Queens". Thereafter, defendant was indicted in Queens County and charged with various crimes arising out of the robbery of two elderly Queens women on June 10, 1977 and September 1, 1977. Prior to trial a suppression hearing was held. At that hearing Officer Durkin, a member of the Queens Senior Citizen's Robbery Unit, testified that on September 12, 1977 he went to the Brooklyn precinct at which defendant was being held in order to speak with him about the Queens robberies. Prior to speaking with defendant, Durkin advised him that "he had a right to remain silent" and that "he had a right to an attorney". During the course of their conversation defendant denied ever having been in Queens County and, when told by Officer Durkin that two

railroad tickets for a Brooklyn to Queens train ride had been discovered in the apartment of one of the elderly victims, defendant stated that "I don't make mistakes". On September 27, 1977, pursuant to court order, defendant was transported from Rikers Island to Queens County in order to participate in a lineup. Defendant testified that on the way to the lineup he had been told that he would see his attorney before the lineup, that at the precinct he never saw his attorney but was told that his attorney was on the other side of the two-way mirror, and that he would not have participated in the lineup had he known of his attorney's absence. In contrast to this, Officer Strub testified that defendant had been advised of his right to counsel and had waived it. However, Strub admitted that defendant's waiver form was not signed and contained blank spaces, whereas the forms of the other participants were signed and contained no blank spaces. On the basis of the foregoing facts, we hold that the failure to suppress evidence of the statement to Officer Durkin was error. Defendant's encounter with Officer Durkin clearly constituted a custodial interrogation. Concededly, defendant was not advised that anything he said could be used as evidence against him. As "this warning is an absolute prerequisite to interrogation" and as "[n]o amount of circumstantial evidence that the person may have been aware of this * * * will suffice to stand in its stead" (*Miranda v Arizona*, 384 US 436, 471-472), the statement should have been suppressed (see, also, *People v Dunnett*, 44 AD2d 733). Defendant contends that he was denied his right to counsel at the Queens lineup at which his presence was procured by an ex parte court order (citing *People v Coleman*, 43 NY2d 222; *People v Lloyd Winston G.*, 45 NY2d 962; *People v Banks*, 53 NY2d 819). The People contend, and we agree, that the cases upon which defendant bases this contention were impliedly overruled by the case of *People v Hawkins* (55 NY2d 474) in which a majority of the Court of Appeals held that a defendant has no right to counsel at an investigatory corporeal lineup held prior to the filing of an accusatory instrument against him on the charges under investigation. Defendant argues that evidence of the pretrial identification is inadmissible for the additional reason that the *New York Post* article of September 10, 1977 which reported the arrest of defendant and his companion and contained a photograph of each "was tantamount to a highly suggestive single photo showup which infected all subsequent identification procedures". We reject this argument. "The rule * * * is that the due process clause is violated only where the identification is the result of improper conduct by law enforcement officials" (*People v Ramos*, 52 AD2d 640, 644, affd 42 NY2d 834). There is no evidence that the photographs contained in the article were supplied by law enforcement officials (cf. *United States v Boston*, 508 F2d 1171), and hence they may not serve as the basis for suppression of the in-court identification of defendant by the witnesses who saw them (see, also, *United States v Henderson*, 489 F2d 802). In view of the fact that it cannot be said that the constitutional error in failing to suppress defendant's statement to Officer Durkin was harmless beyond a reasonable doubt, a new trial is required (see *People v Almestica*, 42 NY2d 222; *People v Crimmins*, 36 NY2d 230). Damiani, J. P., O'Connor, Thompson and Brown, JJ., concur.