■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES PORPEGLIA, Appellant.—Mercure, J. Appeal from a judgment of the County Court of Albany County (Harris, J.), rendered April 28, 1989, upon a verdict convicting defendant of the crimes of robbery in the second degree, kidnapping in the second degree, coercion in the first degree and unlawful imprisonment in the first degree.

Defendant's criminal convictions arise out of his January 8, 1988 robbery of a branch of Northeast Savings Bank in the Village of Voorheesville, Albany County, during the course of which he took a bank customer hostage and forced her to drive him to a location near his apartment. The only issues raised on appeal concern County Court's admission of identification evidence connecting defendant with the crimes.

We affirm. Initially, we disagree with the contention that County Court erred in admitting evidence of witnesses' identification of defendant at a lineup conducted in the absence of defendant's attorney. The testimony given at a *Wade* hearing showed that during the afternoon of January 8, 1988 defendant was arrested and transported by Investigator Raymond Engel of the Sheriff's Department to the Voorheesville State Police substation, where preparations were begun for a lineup. At 7:15 P.M., Engel received a telephone call from George Sarachan, who identified himself as defendant's attorney. Sarachan was permitted to speak with defendant and was advised by Engel that a lineup would take place as soon as arrangements could be made. At 7:55 P.M., Sarachan again called and this time stated that another attorney, Lawrence Conners, would be representing defendant.

Conners subsequently called Engel and at 8:47 P.M. stated that he was coming to the station from his home in Rensselaer County and that the police were not to question defendant or conduct any lineups. Engel advised Conners that defendant would not be questioned but that lineups would take place as soon as arrangements were completed and that Conners was welcome to attend. As of 9:25 P.M., Conners had not yet arrived, and the lineups commenced in his absence. In each case, defendant and four police officers, in civilian clothing, were exhibited to a witness, first wearing ski masks, as the robber had, and then without masks. Bonnie Livingston and Terry Buchardt each identified defendant, both with and without the mask. Conners arrived at the police station at 9:47 P.M., was permitted to speak with defendant, and two more sets of lineups were then conducted in Conners' presence in precisely the same manner as the first two.

We begin our analysis with the proposition that a suspect's right to have an attorney present at a lineup conducted following his arrest but prior to the commencement of a criminal proceeding is limited *(see, People v Blake,* 35 NY2d 331, 340-341). Although a suspect's attorney may not be excluded from the lineup proceedings, "[i]n view of the limited benefits which counsel provides at this stage, the police need not suspend the lineup in anticipation of the arrival of counsel if this would cause unreasonable delay" *(People v Hawkins,* 55 NY2d 474, 487, *cert denied* 459 US 846; *see, People v Coates,* 74 NY2d 244, 249). "[T]he appropriate course of action would depend on 'whether the delay would result in significant inconvenience to the witnesses or would undermine the substantial advantages of a prompt identification confrontation' " *(People v Coates, supra,* at 249, quoting *People v Hawkins, supra,* at 487).

The record shows that weather conditions on the day of the lineup were very poor, with severe snow and extreme cold causing dangerous driving conditions. For this reason, the police were forced to resort to the use of other police officers in the lineup with defendant. Of the four so employed, three were on duty at the time and were badly needed on road patrol. Moreover, based upon the series of telephone calls and conflicting representations which Engel received first from Sarachan and then Conners, Engel had no good reason to believe that Conners would appear within a reasonable period of time, if at all. Nevertheless, the lineups were not conducted for over two hours following Sarachan's initial telephone contact and commenced nearly 40 minutes following Conners' announcement that he intended to appear. Further, there is no indication of prejudice to defendant because Conners was able to observe the precise manner in which the lineups were conducted, including the appearance of the other four participants, and Livingston and Buchardt both testified at the *Wade* hearing and at trial and were subjected to defendant's cross-examination *(see, People v Hawkins, supra,* at 486, n 4). Notably, defendant's attorney did not voice any objection or make any suggestions in connection with the two sets of lineups which he did observe *(see, People v Blake, supra,* at 341). In our view, the record provided ample support for the conclusion that defendant was deprived of no rights guaranteed by our Federal or State Constitutions.

We also reject the argument that the prosecution failed to prove by clear and convincing evidence that the hostage's incourt identification was not tainted by a suggestive pretrial

identification procedure. It is well established that when a witness's in-court identification has an independent origin, untainted by police procedures, it is properly ruled admissible *(see, People v Dobranski,* 112 AD2d 541, 542, *lv denied* 66 NY2d 614; *People v Chamberlain,* 96 AD2d 959, 960). Here, the hostage testified that she had an opportunity to look at defendant when they were both in line at the bank and that she noticed his eyes were "incredibly blue", that defendant stood side-by-side with her for approximately 5 to 10 minutes, during which she had further opportunities to observe his eyes, and that she looked at defendant several more times when they were together in her car and when defendant got out of the car. Further, the hostage provided an adequate explanation for her inability to identify defendant through a one-way mirror and in person following his arrest, circumstances which merely went to the weight and not the admissibility of her testimony *(see, People v Mure,* 129 AD2d 862, 863, *lv denied* 70 NY2d 802).

Judgment affirmed. Kane, J. P., Weiss, Mikoll, Yesawich, Jr., and Mercure, JJ., concur.