OPINION OF THE COURT
John J. Connell, J.
The defendant, claiming that improper identification testimony may be offered against him, has moved to exclude the identification testimony of Rea Leggett on the ground that it would not be admissible because of improperly made prior identifications of the defendant by the prospective witness.
The People have the burden of going forward to show that *486 the pretrial identification procedure was not constitutionally impermissible. The defendant, however, bears the burden of establishing, by a preponderance of the evidence, that the procedure was impermissible. A pretrial suppression hearing was conducted before me on this issue on November 8, 1990 and March 8, 1991.
FINDINGS OF FACT
On February 4, 1990, Investigator Douglas Boccardo of the Rochester Police Department was investigating a larceny involving a victim by the name of Rea Leggett. After obtaining a description from the victim he compiled a photo array in which the defendant’s photo was placed. The array was of six male whites of similar appearance. It was received in evidence as People’s exhibit No. 1. Investigator Boccardo asked the victim to look at the array and to indicate if she recognized anyone. After viewing the photo array for a short period of time, the witness selected photo No. 3, which was that of the defendant.
Thereafter, the investigator met with the defendant and asked him to accompany him to the Public Safety Building. The defendant agreed to go with the investigator, and was asked upon his arrival if he would consent to stand in a physical lineup. The defendant refused to do so and was allowed to leave.
Investigator Boccardo was then contacted by Assistant Public Defender Elma Bellini, who represented the defendant on an unrelated matter. She told the investigator that he was not to interview her client without her being present. The attorney then discussed the new investigation and entered into negotiations with the officer that extended over a period of several months in which there were offers and counteroffers of a polygraph examination, the result of which would dictate whether charges were filed against the defendant, as well as a possible lineup which would dictate whether or not charges were placed against the defendant. On May 3, 1990, Investigator Boccardo asked the defendant to have his new attorney, Assistant Public Defender Kevin Anderson, contact the police regarding placing the defendant in a physical lineup. Thereafter, Elma Bellini again notified the officer of her representation and said that her client would not take a polygraph exam. There were further discussions about a lineup procedure, but no definite arrangements were made.
*487 On June 5, 1990, the investigator again spoke with the defendant who provided the officer with the name of a new attorney. In an attempt to contact that attorney, the investigator called the Public Defender’s office and was told that no attorney by that name worked there nor anywhere else in the local legal community. Concluding that the defendant was "no longer cooperative”, the investigator waited for Mr. Polimeni’s court appearance on an unrelated case on June 8, 1990. When the defendant left the courtroom, Investigator Boccardo arrested him and set in motion arrangements for a physical lineup. Public Defender Devlin observed her client being arrested and told the investigator that the defendant was not to stand in a lineup without a court order. The investigator then sought advice from the District Attorney’s office and was told that since it was in investigatory lineup, no court order was necessary. The investigator invited the defendant’s attorney to be present at the then unscheduled lineup and allowed the defendant to speak with his attorney at approximately 1:15 p.m., which was one hour before the lineup. Minutes before the lineup the defendant requested to again speak with his attorney. The investigator attempted to call the Public Defender’s office once, but received a busy signal. The defendant than asked Investigator Boccardo if he would be released if not selected at the lineup. When the officer indicated that he would, the defendant agreed to stand in the lineup. He was then placed in a physical lineup with five other males of similar appearance. The victim was given an opportunity to view the lineup and after doing so, selected the defendant. Neither during the photo array nor during the lineup was anything suggestive of the defendant’s identification said by the police to the victim. Nothing was done during either of those procedures which would in any way suggest that the defendant be selected by the victim. The Public Defender was not formally assigned to represent the defendant on the instant matter until the arraignment the following day.
CONCLUSIONS OF LAW
For quite some time, neither the State nor the Federal Constitutions have recognized a right to counsel at a preadversarial, investigative lineup (Kirby v Illinois, 406 US 682; People v Hawkins, 55 NY2d 474, cert denied 459 US 846). However, the courts have recognized the right to counsel at investigatory lineups where there has been "significant judi *488 cial activity” in the matter (People v Coates, 74 NY2d 244; People v Hernandez, 70 NY2d 833; People v Hawkins, supra; People v Coleman, 43 NY2d 222; People v Blake, 35 NY2d 331).
Four recent decisions by the Court of Appeals require review to determine how much of the general rule stated in Hawkins (supra) still remains.
In People v Hernandez (supra), aware that the defendant would be appearing in court on an unrelated matter (and, presumably, aware that he would be represented by counsel), the police arrested the defendant as he was leaving the courtroom and placed him in a lineup. The court upheld the identification citing the rule in Kirby and Hawkins (supra).
People v Coates (supra) involved an incarcerated defendant who was represented by an attorney and was placed in a court-ordered lineup. Subsequent to that lineup, he was placed in another lineup on an unrelated matter for which the defendant did not have an attorney. The court ruled that since the police were aware that the defendant was represented by counsel and since the defendant had requested counsel; they had an obligation to inform the attorney and give counsel a chance to appear.
People v Thomas (76 NY2d 902) involved a defendant who was placed in a lineup pursuant to a court order. The police notified his attorney of the time and place of the lineup, as requested by that attorney. However, prior to the lineup, the attorney contacted the prosecutor and indicated that he would not be present at the lineup. The subsequent identification was suppressed by the court on the ground that the counsel’s failure to appear at the lineup could not constitute a waiver of the defendant’s right to counsel (People v Yut Wai Tom, 53 NY2d 44).
The Court of Appeals most recent pronouncement in this area is People v LaClere (76 NY2d 670). There, as in Hernandez (supra) and the instant case, the police were aware that the defendant would be appearing in court with his attorney on a matter unrelated to the case they were investigating. After the defendant was arrested, the attorney in LaClere immediately asked the presiding Judge to advise the police not to talk to his client without his being present. The Judge did so and the police thereafter took the defendant and placed him in a lineup without advising his attorney. While reaffirming the general rule announced in Hawkins (supra), the court stated that the defendant’s right to counsel was "activated” by the judicial admonition to the police. Virtually in the same *489 breath, however, the court stated its "holdings are clear and consistent that suspected individuals are not entitled to counsel at preaccusatory, investigatory lineups” (at 672).
Those seeking guidance from LaClere (supra) are told that in situations where the right to counsel has been "activated”, defense counsel should be notified of an impending lineup "if possible” (at 672-673). Citing defense counsel’s limited role at identifications, the court, without giving examples, labeled the right as not absolute or abstract (at 673; People v Hobson, 39 NY2d 479) and conceded that there may be exigent circumstances in a given case that could override the right to counsel.
Applying these cases to the facts in the instant matter unfortunately presents little guidance for law enforcement’s future behavior. In this case, it would be hard to imagine more diligent conduct on the part of the investigator between the time of the photo array and the lineup. His countless contacts with the defendant and the defendant’s attorneys were undoubtedly motivated by a sincere, good-faith effort on his part to arrest the right person for this crime. Those efforts, however, also highlight his knowledge of the existence and active participation of defense counsel in this matter.
There was no evidence presented at the hearing which would indicate exigent circumstances necessitating the lineup take place without the presence of the attorney nor why additional efforts were not made to contact the attorney beyond the one unsuccessful telephone call.
Nonetheless, there was no judicial action in this case at the prelineup stage which would "activate” a notice requirement under LaClere (supra), although the defendant’s attorneys were diligent in their actions on his behalf between February and June 1990. LaClere did not require the investigator in this case to inform defense counsel of the lineup. However, the defendant’s request for counsel did (People v Hawkins, 55 NY2d 474, cert denied 459 US 846, supra).
Even when the right to counsel attaches, however, a defendant may waive such right if done in the attorney’s presence (People v Coleman, 43 NY2d 222, supra). In this case the defendant’s uncounseled actions and statements in that regard did not constitute a waiver of that right.
Accordingly, the defendant’s application to suppress the identifications of Rea Leggett is in all respects granted.