[607 NYS2d 624]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
SALEEM MCRAE, Appellant.

First Department, February 3, 1994

APPEARANCES OF COUNSEL

*Jane Levitt* of counsel *(Philip L. Weinstein,* attorney), for appellant.

*Alan Gadlin* of counsel *(Norman Barclay* with him on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

## OPINION OF THE COURT

ELLERIN, J.

At issue on this appeal is the propriety of police conduct in arranging the lineups at which defendant was identified as the culprit in two knifepoint robberies.

Defendant was arrested on February 13, 1990 and charged with having robbed, in separate incidents, complainants Nichols and Chevalier. Defense counsel was timely served with notice pursuant to CPL 710.30 informing him that the prosecution intended to introduce evidence at trial showing that defendant had been identified in lineups. Counsel thereupon moved to suppress, and the court granted the motion to the extent of ordering a *Wade* hearing.

At the hearing, Police Officer Robert Newham testified that, on the morning of February 13, 1990, complainant Nichols, who had been robbed a few days earlier, selected defendant's photo from an array. Newham immediately went to Brooklyn Supreme Court, where he knew that defendant and one Al Green were to be arraigned that day on unrelated charges. Newham testified that after he learned that defendant was to be released on his own recognizance on the Brooklyn charges, he informed defendant's and Green's attorneys that he was taking the defendants to Manhattan where they would be placed in 7 to 10 lineups commencing at 4:00 P.M. Counsel indicated that they would attend. According to Newham's recollection, defendant's attorney was male and Green was represented by a female Legal Aid attorney.

According to Legal Aid attorney Alicia Fagan, it was she who represented defendant and a male attorney who represented Green. Fagan testified that she was told by one of the officers who removed the defendant from the Brooklyn courthouse that a lineup would be held. When Fagan gave the officer her card, the officer asked her if she intended to attend the lineup and she indicated that a Manhattan Legal Aid attorney would attend and that the lineup should not take

place until that attorney arrived. The officer did not tell her the time that the lineup would take place but told her to "hurry up" and arrange to have counsel there. She then called a supervisor who agreed to make the arrangements for an attorney to attend. That was her final contact with the matter.

The officers left Brooklyn at about 1:00 P.M. and brought defendant and Green to the 13th Precinct, where Newham informed Officer Michael Kennedy that defendant's and Green's counsel would attend the lineup. Various complainants in a number of separate robberies in which it was thought defendant might have been involved, including complainants Nichols and Chevalier, were contacted and told to be at the precinct. According to Newham, when the person he recalled as being defendant's attorney called, Newham told him that a number of complainants were making arrangements to attend and that the lineups would be held shortly after 4:00 P.M. Counsel indicated that he would be there.

Between 3:30 and 4:00 P.M., Kennedy was informed by a sergeant that defendant's attorney had called again. The arrangements for the lineups were completed by 4:00 P.M. and, as Green's attorney had arrived but defendant's had not, the lineups for Green were held first. Defendant informed the officers that he did not wish to proceed without counsel. At 5:00 P.M., Kennedy took a call from a man identifying himself as defendant's counsel, who stated that he could not attend the lineup that day and requested a postponement until the next day. Kennedy explained that the complainants and fillers had already been assembled for hours and that some of the complainants could become unavailable by the next day. Counsel stated that he nevertheless objected to the lineup going forward without his presence.

The lineups were held and complainant Nichols made an immediate and positive identification of defendant. However, according to Officer Joseph Riley, during the lineup held for complainant Chevalier, she tentatively selected defendant but said that she was not sure. Officer Riley asked why she was not sure and she responded, "Maybe if I heard him speak I can be 100% sure." Riley then wrote out a few phrases, i.e., "Give me all your money. Do you have anything else? Do you have a car?" and had each participant approach the window and read them. After they were finished, Chevalier positively identified defendant as the man who had robbed her.

Defendant argues on appeal that identification testimony should have been suppressed on various grounds. As to the final, positive identification by Chevalier, he contends that it should be precluded because the notice he received pursuant to CPL 710.30 failed to inform him that he had been identified by voice, and, in the alternative, that it should be suppressed because the prosecution failed to come forward with evidence that the voice identification procedures were not unduly suggestive. Additionally, as to both lineups, he argues that testimony concerning them should be suppressed in its entirety because he was deprived of his right to counsel.

The purpose of CPL 710.30 is to provide a defendant with the information needed to timely move to suppress evidence which the prosecution intends to use against defendant *(People v O'Doherty,* 70 NY2d 479, 488). It applies to both statements and identification evidence and, as to the latter, applies regardless of whether the identification was made visually or by voice *(People v Anthony,* 172 AD2d 322, 323, *lv denied* 77 NY2d 991). Specifically, it requires that, within 15 days of a defendant's arraignment, if the prosecution "intend[s] to offer at a trial * * * (b) testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him as such, they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered." (CPL 710.30 [1] [b].)

■ While failure to provide such notice, absent good cause, generally requires preclusion *(People v McMullin,* 70 NY2d 855, 856-857), if a defendant moves to suppress without protesting a lack of notice, any objection to its absence is waived (CPL 710.30 [3]). However, a defendant may preserve his or her objection by protesting the lack of notice before moving to suppress *(People v Bernier,* 73 NY2d 1006, 1008; *People v St. Martine,* 160 AD2d 35, 39-40, *lv denied* 76 NY2d 990). In this case, after it emerged at the *Wade* hearing that complainant Chevalier had heard the voices of the lineup participants before making her identification, counsel protested the lack of CPL 710.30 notice as to that part of the procedure. Defendant's argument that he was entitled to separate notice of the vocal aspect of the identification is therefore preserved for review.

■ Defendant argues that the statute requires specificity as to the manner in which the complainant identified the defen-

dant and that the statement in the notice that a lineup had taken place was inadequate to inform him that the witness had had an opportunity to hear the participants as well as see them before making her identification. However, CPL 710.30 notice is not a discovery device. The prosecution's obligation under the statute is to provide the defendant with sufficient information concerning the police-arranged identification so that he or she may move to suppress *(see, People v O'Doherty, supra)*. Just as defendant need not make any specific factual allegations in order to obtain a *Wade* hearing *(see,* CPL 710.60 [3] [b]), there is no necessity that the notice provide details of the factual circumstances of the identification. Such factual details, if relevant, may be explored at the hearing. In this case, it is clear that the fact that the witness was allowed to hear the lineup participants as well as see them was merely a factual circumstance which did not impact on counsel's decision or ability to move to suppress and obtain a hearing at which counsel would be able to explore the circumstances of the identification. Thus, the prosecution was not required to include such information in the notice.

Defendant next argues that evidence of the vocal portion of complainant Chevalier's identification should have been suppressed because the prosecution failed to come forward with evidence establishing that the police conduct was reasonable or that the voice identification procedures were not unduly suggestive.

Voice identifications are subject to the same constitutional safeguards as visual identifications *(People v Collins,* 60 NY2d 214, 218; *People v Shepard,* 162 AD2d 226, *lv denied* 76 NY2d 944). Thus, upon a motion to suppress, it is the prosecution's obligation to come forward with evidence establishing that the police conduct was reasonable and that the procedures used were not unduly suggestive. Once that burden is met, the defense bears the ultimate burden of proving that the procedure was unduly suggestive *(see generally, People v Chipp,* 75 NY2d 327, *cert denied* 498 US 833; *People v Gonzalez,* 173 AD2d 48, 55-56, *lv denied* 79 NY2d 1001; *People v Olmo,* 173 AD2d 221, 224). Such suggestiveness could be caused by the selection of fillers whose voices were so dissimilar to a description given by the complainant of the criminal's voice that the complainant would eliminate the fillers out of hand or by the selection of fillers whose voices were so similar to each other and yet so dissimilar to defendant's as to unfairly highlight defendant's voice. In this case, defendant argues that, since

the vocal portion of the lineup at which defendant was identified was not recorded, and since the prosecution presented no testimony concerning the nature of the voices of the participants, the prosecution failed to satisfy its burden of going forward.

Initially, it must be recalled that the officers only arranged the voice lineup at the request of the witness after she had tentatively identified defendant. In that setting, there can be no suggestion that the police deliberately selected participants whose voices would highlight defendant's.

Nevertheless, even though the voice identification was performed at the behest of the complainant, it was actually conducted by the police, and defendant was compelled to participate. Under such circumstances, due process considerations require that the procedures have been conducted in a way not conducive to mistaken identification *(see, People v Logan,* 25 NY2d 184, 191-193, *cert denied* 396 US 1020; *cf., People v Shepard, supra; but see, People v Wong,* 133 AD2d 184, *lv denied* 70 NY2d 878). Thus, if the prosecution cannot show that the procedure conducted by the police was unbiased, it will not avail them to show that the bias was unintentional. For example, a lineup in which the fillers were all of a different race than the defendant would not be permissible merely because the prosecution was able to show that the fillers had been selected by a totally random process. Defendant thus argues that voices selected at random could have unfairly highlighted his voice and that it was the prosecution's obligation to come forward with evidence demonstrating that they did not.

However, in order to establish, in the first instance, that an identification procedure was not unduly suggestive, the prosecution is not obligated to come forward with evidence demonstrating that each individual physical characteristic by which the complainant might identify the defendant was shared by the fillers as long as it shows that the identification procedure, as a whole, did not create a "substantial likelihood that the defendant would be singled out for identification" *(People v Chipp, supra,* at 336; *People v Simmons,* 170 AD2d 15, *lv denied* 78 NY2d 1130). In this case, it must be recalled that the complainant was not identifying defendant solely by voice, in which case the potential for misidentification can be significant *(see, People v Collins, supra,* 60 NY2d, at 218). Here, the complainant's identification of defendant was based on a combination of her visual and aural observations, and

defendant does not argue that the identification procedure unfairly highlighted him in any other way. This is particularly significant inasmuch as the complainant had already made a tentative identification of defendant based solely on her visual observations and used his voice merely as a secondary characteristic, which, as it turned out, strengthened her conviction that he was the robber. Moreover, the impromptu procedure was arranged in as fair a manner as possible so that each of the lineup participants read the same phrases, thereby also avoiding any unnecessary pinpointing of defendant. In these circumstances, the ability of the complainant to hear the defendant's voice before making a final identification was clearly a positive factor helping to reduce the possibility that the procedure, as a whole, would lead to a misidentification *(see, e.g., People v Adams,* 167 AD2d 160, *lv denied* 76 NY2d 1019).

In the instant case we find that the record, as a whole, demonstrates that the prosecution satisfied its burden of coming forward with evidence demonstrating that there was no undue suggestiveness in the identification procedures. Since defendant failed to bring forth any evidence at the hearing either on his own case or on cross-examination of the prosecution witnesses demonstrating that the identification was unduly suggestive in either its visual or its aural dimensions, the motion to suppress on this ground was properly denied.

Defendant's final argument concerning the admissibility of identification evidence is that he was deprived of his right to counsel at both lineups and that, as a result, all identification evidence should have been suppressed.

Regardless of whether formal proceedings have commenced, when a defendant is actually represented by counsel and either of them requests to have counsel present, the police may not exclude the attorney from a preaccusatory, investigatory lineup or in any way impede the defendant's access to the attorney *(People v Coates,* 74 NY2d 244, 248-249; *People v Hawkins,* 55 NY2d 474, 487, *cert denied* 459 US 846). However, even where the right to counsel for preaccusatory lineup purposes has so attached, the right is not absolute *(People v LaClere,* 76 NY2d 670, 672-673). Rather, the police are merely required to notify counsel of an impending lineup, if possible, and provide a reasonable opportunity to attend *(supra).* The police are not, however, required to accede to requests that counsel attend if it would cause "unreasonable delay" *(People v Hawkins, supra,* at 487).

In this case, the record is somewhat confused as to Officer Newham's awareness as to which of the attorneys that he spoke to at Kings County Supreme Court represented which defendant. However, even assuming that Officer Newham was incorrect, there is no dispute that defendant's attorney in his Kings County case was notified that the lineups were to take place. Moreover, even accepting defendant's contention that that attorney was not notified of the precise time the lineups would take place and that no attorney representing defendant called the precinct before 5:00 P.M., one is left with the conclusion that defendant's attorneys, knowing the lineups were imminent, and having already informed the police that counsel would appear, failed to contact the police for over four hours and, at that point, although aware that arrangements involving at least seven complainants had been going forward in the interim, contacted the precinct merely to ask for a postponement to the next day. In light of such behavior on the part of counsel, along with the fact that all of the other participants were ready to proceed with the lineups, we find no impropriety on the part of the police in refusing counsel's last minute request.

For all these reasons, we find that defendant's motion to suppress identification testimony was properly denied. As defendant's remaining contentions are equally without merit, his conviction should be affirmed.

Accordingly, the judgment of the Supreme Court, New York County (Dorothy Cropper, J.), rendered on February 6, 1991, convicting defendant, after trial by jury, of two counts of robbery in the first degree and sentencing him to concurrent terms of imprisonment of 7 to 14 years, should be affirmed.

SULLIVAN, J. P., KUPFERMAN and NARDELLI, JJ., concur.

Judgment, Supreme Court, New York County, rendered February 6, 1991, affirmed.