People v Nunez (2004 NY Slip Op 50157(U))

[*1]

People v Nunez

2004 NY Slip Op 50157(U)

Decided on March 19, 2004

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 19, 2004

Supreme Court, Kings County
 PEOPLE OF THE STATE OF NEW YORK, Plaintiff, 
against
JOHN NUNEZ, Defendant.
Ind. No. # 35-2003
APPEARANCES:

Attorney for the People:
Charles J. Hynes
District Attorney, Kings County
350 Jay Street
Brooklyn, NY 11201
by ADA Kendra Monte
Attorney for the defendant:
Bernard Udell, Esq.
16 Court Street, Suite 1004
Brooklyn, New York 11241

ROBERT J. COLLINI, J.
The defendant is charged with attempted murder in the second degree, assault in the first and second degree, criminal possession of a weapon in the second and third degree and reckless endangerment in the first and second degree. The indictment alleges that in his attempt to kill Edwin Cachola, the defendant caused serious physical injury to a two year old girl.[FN1]
Pursuant to CPL 710.60 (4), a Wade hearing was conducted before this court. The hearing presented two separate and distinct issues: the first, which the court decided in an oral decision from the bench, dealt with whether the identification procedures employed by law enforcement in this case were unduly suggestive.[FN2] The second, to be addressed herein, deals with [*2]whether the defendant was denied his right to counsel at his pre-arraignment line-up.
Findings of Fact
Since the factual issues are subject to different interpretations, I will explain the testimony of each witness at great length.
The People began their presentation by calling Detective Steven Amalfitano, who testified that on December 30, 2002, he was informed by his lieutenant that two defendants and their attorney were coming to the 75 Precinct to surrender and that he was to meet them in the rear parking lot. The defendants arrived at approximately 8:45 AM.[FN3] They were then taken to the interview room. Mr. Stephen Murphy, their attorney, and a female companion, were given seats in the front reception area.[FN4]
Shortly before 9:00 AM, Detective Amalfitano telephoned Robert Lincoln, the case detective, who arrived shortly before 10:00 AM.
Mr. Murphy subsequently informed Detective Amalfitano that he had to leave to attend court. He left at approximately 12:50 PM. The last witness who was to view the lineup arrived at 1:10 PM. Mr. Murphy gave no indication to the officers that he was coming back, nor did he ask to have the line-ups rescheduled or delayed until another attorney appeared.
 The People also called Detective Lincoln, who testified that on December 29, 2002, Mr. Murphy called the 75 Precinct stating that he represented the defendant and the co-defendant and that he was willing to surrender both defendants in the near future. Mr. Murphy had not personally been in contact with either defendant at the time of this call but had been retained on their behalf.
The following morning, between 9:00 and 9:30 AM, Detective Lincoln received a telephone call, at home, from Detective Amalfitano, informing him that the defendants had surrendered. He arrived at the 75 Precinct between 10:30 and 11:00 AM. Mr. Murphy was already waiting at the precinct. After conferring with his supervisors, Detective Lincoln began the process of setting up two separate line-ups, one for the defendant and one for the co-defendant.
An attempt was made , by telephone, to contact Gerald Brown, one of the eyewitness. Unable to get through, Detective Lincoln went to Mr. Brown's residence and left a message to [*3]contact him. Other witnesses began arriving at the precinct.[FN5] Three witnesses were placed into separate rooms where they would be unable to contact each other or view the two suspects.
Before the last witness arrived, Detective Lincoln had a conversation with Mr. Murphy concerning when the line-ups would take place. He informed Mr. Murphy that the police were still waiting for the last witness before commencing any of the line-ups. Mr. Murphy informed Detective Lincoln that he had another appointment in the afternoon and he could no longer wait. He did not ask for the line-up to be rescheduled, nor did he ask Detective Lincoln to wait until another attorney appeared on behalf of the defendants. Shortly thereafter, Mr. Murphy left the precinct [FN6]. Ten minutes later, the final witness arrived. The line-ups commenced at approximately 1:20 PM. The line-ups involving this defendant were concluded shortly after 1:30PM.[FN7]
Pursuant to questions addressed by the court, Detective Lincoln admitted that there was no necessity to do the line-up at that time and that none of the witnesses had expressed any concern with respect to his or her safety. Detective Lincoln also told the court that he did not intentionally wait until after Mr. Murphy left before conducting the line-up and that he made his best effort to get all the witnesses into the precinct in a timely manner.
The People then called Lieutenant John Amodeo, the commanding officer of the 75 Precinct on the day of the line-up.[FN8] He testified that on December 30, 2002, at approximately 8:45 AM, two suspects that were wanted in a high profile case surrendered with their attorney. Because of manpower shortages, Lieutenant Amodeo assisted Detective Amalfitano in bringing the suspects into the precinct. He had been unaware that the suspects would be surrendering that morning and had not scheduled Detective Lincoln to work the day shift. After conducting a search of the defendants, Lieutenant Amodeo delegated the defendants to Detective Amalfitano's care, pending the arrival of Detective Lincoln. Lieutenant Amodeo saw Mr. Murphy sitting in the waiting area outside the investigative room. As soon as Detective Lincoln arrived, the detectives began the process of preparing the two line-ups.
Prior to the arrival of the last witness, at 1:10 PM, Mr. Murphy left the precinct. Lieutenant Amodeo stated that he believed counsel's actions were "tactical and provocative."[FN9] Lieutenant Amodeo stated that he did not have a number where he could reach Mr. Murphy and did not authorize anyone to reach out to Mr. Murphy to see whether he could come back.
Lieutenant Amodeo stated that he did not wait until after Mr. Murphy left to conduct the line-up and had no idea that Mr. Murphy was about to leave the precinct. After Mr. Murphy left, [*4]he ordered Detective Amalfitano to memorialize a time line of the events of the day in a DD-5.
Lieutenant Amodeo acknowledged that the last witness arrived at the precinct at 1:10 PM, that the first line-up was conducted at 1:20 PM and that the last line-up was conducted at 1:45 PM.[FN10]
Stephen Murphy was called as a witness for the defense.[FN11] Mr. Murphy testified that on December 29, 2002, he called the 75 Precinct in order to arrange the surrender of two clients. The following morning, at around 8:15 AM, Mr. Murphy and his clients arrived at the 75 Precinct. He was informed that a line-up would be conducted and he sat on a bench outside a conference room. On at least four or five occasions, Mr. Murphy asked various officers when the line-up would begin. Each time he was told to continue waiting because they were not ready yet. At approximately 12:45, Mr. Murphy gave his business card to an officer and told that officer to give him a call if they were going to conduct the line-ups.[FN12] He stated that he never received a call and never returned to the precinct. He testified that if he had been notified, he would have returned to the precinct to witness the line-up. He further testified that if he had been informed that the line-ups would begin in twenty minutes, he would have stayed until the line-ups were completed.
The defense also called Diana Hernandez, the defendant's girlfriend. She testified that she was with the defendant when he surrendered on December 30, 2002. She stated that they arrived at the precinct at approximately 8:45 or 9:00 AM. While they were waiting, Mr. Murphy kept asking the detectives when the line-ups would begin. He was very upset, to the point where he was pacing. Finally, Mr. Murphy gave one of the detectives his business card and left.[FN13] Five minutes later, the detectives asked Diana Hernandez to move to another room because they were going to conduct the line-ups.
This court credits the testimony of each of the witnesses to a certain extent. Each witness had areas of their testimony in which they were unclear or uncertain. What is undisputed is that Mr. Murphy surrendered the defendant to the police, waited approximately four hours for line-ups to be conducted with respect to his client, left the precinct shortly before 1:00 PM and within twenty minutes of his leaving, all eight line-ups had been conducted. While there is contradictory testimony about whether Mr. Murphy left his business card with the police before he left the precinct, it is undisputed that the police never attempted to contact Mr. Murphy after [*5]he had left the precinct and before the line-ups were conducted.
Conclusions of Law
Although courts have traditionally found the assistance of counsel to be of importance during custodial interrogations, counsel plays a much more limited role at identification proceedings (Hawkins, 55 NY2d 474, 485; People v Hobson, 39 NY2d 479, 485). During custodial interrogations, counsel may take an active role on behalf of the client. During a lineup, however, counsel plays the relatively passive role of an observer (Hawkins, 55 NY2d, at 485; People v Blake, 35 NY2d 331, 337). In fact, "the need for and right to a lawyer at an identification lineup is insignificant compared to the need in an ensuing interrogation" (Hobson, 39 NY2d, at 485).
Under the Sixth and Fourteenth Amendments to the United States Constitution, a defendant has no right to counsel at a lineup that occurs prior to the initiation of formal prosecutorial proceedings (Kirby v Illinois, 406 US 682, 688-689; People v Wilson, 89 NY2d 754, 758; People v Hawkins, 55 NY2d, at 482). The Fifth Amendment protection against self-incrimination is not implicated at a preindictment lineup (Wilson, 89 NY2d, at 758; Hawkins, 55 NY2d, at 482-483). Similarly, there is no independent basis in the New York Constitution for requiring counsel at investigatory lineups, although a right to counsel does arise after the initiation of formal prosecutorial proceedings (Wilson, 89 NY2d, at 758; Hawkins, 55 NY2d, at 487).
At the time the lineups were conducted in the case before this court, a felony complaint had not been filed and there had been no other judicial activity significant enough to trigger the defendant's right to counsel (People v Samuels, 49 NY2d 218, 221).
Although the State has no obligation to supply counsel at investigatory lineups, "if a suspect already has counsel, his attorney may not be excluded from the lineup proceedings" (Wilson, 89 NY2d, at 758; Hawkins, 55 NY2d, at 487). This does not mean, however, "that the police must notify counsel of an impending investigatory lineup or that counsel is entitled to a lengthy adjournment at this stage of the investigatory process. In view of the limited benefits which counsel provides at this stage, the police need not suspend the lineup in anticipation of the arrival of counsel if this would cause unreasonable delay" (Hawkins, 55 NY2d, at 487). A determination must be made whether the delay in conducting the lineup "would result in significant inconvenience to the witnesses or would undermine the substantial advantages of a prompt identification confrontation" (Hawkins, 55 NY2d, at 487) (see also, People v LaClere, 76 NY2d 670, 674; People v Coates, 74 NY2d 244, 249).
Additionally, "the right to counsel at an investigatory lineup is not absolute or abstract, and may be overridden if exigent circumstances necessitate that the procedure be conducted without counsel's presence" (Wilson, 89 NY2d, at 759; People v LoPizzo, 173 AD2d 562, 562-563).
[*6]
The uncontradicted testimony in this case is that an attorney accompanied this defendant to the 75 Precinct and facilitated his surrender. The attorney informed the police that he represented the defendant [FN14] and waited outside the detectives' office while they prepared to conduct a series of lineups. After waiting over four hours, counsel informed the police that he had another appointment and left the precinct. The police did not notify counsel that the lineups were only minutes away from commencement, nor did they offer to begin the lineups with the witnesses that were already available. Once counsel left the precinct, the lineups commenced within thirty minutes. The police did not even attempt to contact defendant's attorney, nor did they ask the defendant whether he would be willing to proceed with the lineups in the absence of his counsel.[FN15]
This court credits the testimony of Mr. Murphy that he provided the police with his business card and a telephone number in which he could be reached. Even if Mr. Murphy didn't provide the police with a telephone number, the police could have looked up his number in a telephone directory and could have informed him that the lineups were now ready to proceed.
This court's research failed to find another case directly on point with the facts of this matter. Nevertheless, a brief review of other cases provides the foundation upon which this court must proceed.
In People v Riley (158 AD2d 559, lv denied 76 NY2d 741), an attorney was present in a police precinct with his client. The police informed counsel that they would need a few hours before they would be ready with the lineup. Counsel then left the precinct. When the lineup was ready, the police called counsel and told him that the lineup was now ready to proceed. Counsel then notified the police that he was unable to return to the precinct at that time and unsuccessfully requested that the lineup be adjourned for a day. In affirming the trial court's denial of the defendant's motion to suppress the lineup that was conducted in the attorney's absence, the Second Department held that the police did not have to suspend the lineup in anticipation of counsel's arrival if it would cause an "unreasonable delay" (id., at 559).
In this case, the police never called the attorney to inform him that the lineup was ready to proceed. Perhaps if they had made that call, Mr. Murphy would have been unable, or unwilling, to return to the precinct and the police could have justifiably proceeded with the lineups without defendant's counsel.
In People v McRae (195 AD2d 180, lv denied 83 NY2d 969), the defendant asked for his attorney at an investigatory lineup. The police received a call from the defendant's attorney who requested that the lineup be adjourned until the following day. The police explained to the attorney that the witnesses and fillers had already been assembled for hours and that some of the identification witnesses could not return the following day. In upholding the conducting of the lineup without the attorney, the First Department held that "even where the right to counsel for pre-accusatory lineup purposes has so attached, the right is not absolute. Rather, the police are merely required to notify counsel of an impending lineup, if possible, and provide a reasonable [*7]opportunity to attend. The police are not, however, required to accede to requests that counsel attend if it would cause 'unreasonable delay'" (id., at 187)(citations omitted).
In this case, there was no testimony that the police ever inquired as to whether the identification witnesses could return at a later date or whether they could remain in the precinct until counsel returned. Mr. Murphy waited over four hours before leaving the precinct. The police, knowing that Mr. Murphy had waited all that time, could have called him to see if he could return for the lineup. The police never made the call, however, and proceeded with the lineups as if the defendant's right to counsel had never attached.
By way of contrast, in People v LoPizzo (173 AD2d 562), defense counsel called the precinct and informed the police that he represented the suspect in an impending lineup and would be out-of-town on the day of the lineup. Counsel then requested a one day adjournment. The police conducted the lineup in counsel's absence. The Second Department reversed the conviction, finding that since the lineup was conducted seven months after the crime, there was less of a concern about the necessity of a prompt identification confrontation and found that waiting an additional day for counsel would not cause a significant inconvenience to the witness.
In this case, the court questioned Detective Lincoln and asked him if there was any reason the lineup had to be conducted that day; whether any witness needed to see the lineup that day, whether any witness expressed a concern for his or her safety, whether there were any other safety concerns that required the lineup be conducted at that time. Detective Lincoln responded that there was no particular reason why the lineup had to be conducted at that time other than the fact that all the witnesses were at the precinct.
Prior to conducting an investigatory lineup, the police in People v Davis (172 AD2d 555), knew the defendant was represented by counsel in an unrelated case and that counsel had expressed a desire to be present at the lineup. While the police called defendant's counsel three times, each call was well after the close of business. The lineup was eventually conducted, without the defendant's attorney, at 12:50 AM. In reversing the conviction, the Second Department noted that the lineup was conducted nine months after the crime, minimizing the necessity for a prompt identification, and that there was no evidence that the civilian witness would be unavailable later in the day or during regular business hours.
Although the police in this case did not conduct the lineup in the middle of the night, they did not even attempt to call the defendant's attorney prior to conducting the lineups.
In opposition to the defendant's motion to suppress the lineup identifications, the prosecutor directed the court's attention to several cases, all of which can be distinguished.
In most of the cases cited by the prosecutor, the defendant's attorney was given adequate notice of the investigatory lineup and a reasonable opportunity to attend but he declined to do so. Under those circumstances, unlike the present circumstances, the police were entitled to conduct the lineup without the presence of counsel (People v Toro, 300 AD2d 86, lv denied 100 NY2d 543; People v Rivera, 294 AD2d 519, lv denied 98 NY2d 771; People v Jones, 275 AD2d 686, lv denied 96 NY2d 760; People v Moore, 255 AD2d 340, lv denied 93 NY2d 876; People v Sime, 254 AD2d 183, lv denied 92 NY2d 1038; People v Hildago, 240 AD2d 170, lv denied 90 NY2d 1012; People v Winslow, 237 AD2d 638, lv denied 89 NY2d 1103; People v Petillo, 137 AD2d 843, lv denied 1031).
On the contrary, in this case the police did not make any calls to the defense attorney [*8]before proceeding with the lineup in counsel's absence (compare People v Irick, 243 AD2d 652, lv denied 91 NY2d 926; People v DeJesus, 247 AD2d 311, lv denied 92 NY2d 850).
This case is also distinguishable from People v Cherry (161 AD2d 185, lv denied 76 NY2d 854), where the defendant gave the detective his attorney's card. The detective then left several messages with the attorney's secretary over a two hour period. The secretary informed the detective that she had paged the attorney but had not received a reply. In upholding the lineup that was conducted in the absence of the attorney, the First Department held "the officer made repeated attempts to notify defendant's attorney of the impending lineup, which is all that the law required" (id., at 186)(emphasis added).
 In conducting the lineup under the circumstances presented in this case, "without some notice or other legally recognized excusal of counsel's presence, the police took the risk that the adduced evidence would not be allowed" (Wilson, 89 NY2d, at 759; People v LaClere, 76 NY2d 670, 672).
Accordingly, the defendant's motion to suppress evidence of all four lineup identifications is granted and the People are hereby precluded from introducing such testimony on their direct case.[FN16]
This constitutes the decision, opinion and order of the court.
JSC
Dated: March 19, 2004
Brooklyn, New York
Decision Date: March 19, 2004
Footnotes

Footnote 1:The co-defendant, Jason Valentin, pled guilty before this court and was sentenced to ten years imprisonment.

Footnote 2:The court ruled that the identification procedures employed in this case were not unduly suggestive.

Footnote 3:A photographer was also present in the parking lot.

Footnote 4:The woman present was either Mr. Murphy's wife or Diana Hernandez.

Footnote 5:Because both defendants were young Hispanics and the defendant was only 4'11" tall and weighed only 115 pounds, the police were unable to obtain fillers from the local mens shelter and had to recruit auxiliary and on-duty police officers as line-up fillers.

Footnote 6:Mr. Murphy left the precinct at approximately12:50 PM.

Footnote 7:The second set of line-ups, in which the co-defendant was the subject, commenced at 1:40 PM.

Footnote 8:This witness was called as a rebuttal witness.

Footnote 9:Transcript, page 202, lines 23-24.

Footnote 10:Lieutenant Amodeo also testified about how difficult it is to maintain contact with witnesses because of their fear of being accused of co-operating with the police. He noted that although the police went to Mr. Brown's residence in an effort to bring him to the precinct, he eventually came to the precinct on his own.

Footnote 11:Although Mr. Murphy was this defendant's counsel at the commencement of this hearing, he was relieved from the case when it became clear that he was an important witness whose testimony would be required.

Footnote 12:Mr. Murphy does not recall who he gave his card to or to whom he spoke with prior to leaving.

Footnote 13:This witness does not recall who received Mr. Murphy's card or what he looked like.

Footnote 14:Counsel also stated that he represented the co-defendant, Jason Valentin.

Footnote 15:Once the defendant's right to counsel attached he could not effectively waive that right in the absence of his attorney (People v Settles, 46 NY2d 154).

Footnote 16:This court did not come to this decision lightly. One cannot rule out, with absolute certainty, whether the police contrived to conduct the lineup without the presence of the defendant's attorney. While I won't go so far as to suggest that the police deliberately waited for counsel to leave before conducting the lineup, that factual scenario is not beyond consideration. It may, in fact, be the only view of the evidence that makes sense.