■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JAMES J. MCCORMICK, Appellant.— Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered May 5, 1969, convicting him of possession of a dangerous weapon as a felony, upon a jury verdict, and imposing sentence. The appeal brings up for review an order of the same court entered August 14, 1968 which denied defendant's motion to suppress evidence after a hearing. Judgment and order reversed, on the law and the facts and in the interests of justice, and new suppression hearing and new trial ordered. In this case the testimony of police officer Di Gennaro given on the suppression hearing and that given by him on the trial are in such basic and flagrant contradiction that in the interests of justice the order denying defendant's motion to suppress must be reversed and a new hearing held. As a consequence there also must be a new trial. Only a few examples will suffice: (1) At the hearing the officer testified that immediately upon obtaining entrance to the apartment he "heard * * * [his] partner say they are all under arrest." At the trial, and apparently having been "wised up" that having seen no crime being committed the arrest was improper and anything found upon a subsequent search would be subject to suppression, he conveniently suffered a lapse of memory and was unable to recall any such statement, contending that no arrest was in fact made until after he had seen the exposed gun. (2) At the hearing he testified that the gun was not exposed but was "under his [defendant's] shirt in his pants" and that "it was covered" and "inside a shirt". At the trial he answered in the affirmative to questions whether he could observe the gun "by looking at him," and whether defendant "had it in his belt * * * with the handle above the belt." We do not deem it necessary, in the present posture of this record, to deal with the questionable right of the police to enter the premises in the manner and for the purposes that they allege they did, for we connot sanction a judgment of conviction based upon such palpably inherently inconsistent and contradictory testimony (cf. *People* v. *Berrios,* 28 N Y 2d 361, 369). We note, however, that the charge of criminal trespass by the occupants — the alleged basis for the police entering the apartment — was not made until about a month after the arrest and that it was dismissed. Shapiro, Gulotta and Brennan, JJ., concur; Munder, Acting P. J., dissents and votes to affirm the judgment, with the following memorandum, in which Latham, J., concurs: Patrolman Di Gennaro and his partner went to the premises in question in response to a call by the landlord. The landlord told the officers that apartment No. 6 was occupied by several people who had no right to be there. They went up to the apartment with

the landlord and the door was opened for them by one of the occupants. The two policemen saw there were eight people in the apartment, six men and two women. Two of the men and the women were in the bathroom. The policemen ordered everyone out of the apartment, but instead defendant and another man started walking quickly toward the bathroom. This was a convenient place to dispose of damning evidence. That meant that six people were trying to crowd into a four by six foot bathroom. This was suspicious to say the least and, as Patrolman Di Gennaro testified at the suppression hearing, "I figured maybe something was involved where we might be injured." He then noticed defendant and one of the other men "in sort of a huddle" and told them to put their arms against the wall. In defendant's words, Di Gennaro "frisked" him and discovered a loaded pistol in his belt. Admittedly, there was some divergence as to details in Di Gennaro's testimony at the suppression hearing and at the trial. But his credibility was for the hearing Judge at the former and the jury at the latter. The key question, it seems to me, is whether it was reasonable for Di Gennaro to do what he did in the situation with which he was confronted (*Peters* v. *New York*, 392 U. S. 40). I believe it was. The circumstances were such that he had reason to believe that he and his partner were in danger. The apartment was occupied by persons who were not supposed to be there. There were eight occupants and only two policemen. Six of the occupants were crowding into one room and two of them, after being asked to leave, huddled together. Di Gennaro had reason to be suspicious and fearful; and his response was a limited search for weapons. Such a search, in my view, comes well within those sanctioned in cases such as *Peters* v. *New York* (*supra*); *Terry* v. *Ohio* (392 U. S. 1); and *People* v. *Rivera* (14 N Y 2d 441). As for defendant's claim that someone put the gun under his belt and he did not know what it was until Di Gennaro removed it, his testimony to that effect bordered on the incredible and the jury so treated it.