10-0962-cr
USA v. Stroman

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, at 500 Pearl Street, in the City of New York, on the 26th day of April, two thousand eleven.

Present:    ROBERT D. SACK,
            ROBERT A. KATZMANN,
            RICHARD C. WESLEY,
                        *Circuit Judges.*

───────────────────────────────────────────

UNITED STATES OF AMERICA,

                        *Appellee*,

            - v. -                              No. 10-0962-cr

TRAVIS STROMAN, a/k/a TIMOTHY STROMAN,

                        *Defendant-Appellant.*

───────────────────────────────────────────

For Defendant-Appellant:          EDWARD S. ZAS, Federal Defenders of New York, Inc., Appeals Bureau, New York, N.Y.

For Appellee:                     ZAINAB AHMAD, Assistant United States Attorney (Peter A. Norling, Assistant United States Attorney, *on the brief*), *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, N.Y.

        Appeal from the United States District Court for the Eastern District of New York (Glasser, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of conviction of the district court is **AFFIRMED** and the sentence is **VACATED** and **REMANDED** for further proceedings.

Defendant-Appellant Travis Stroman appeals from a judgment of conviction, entered on March 15, 2010 and amended on March 29, 2010 in the United States District Court for the Eastern District of New York (Glasser, *J.*), following a two-day jury trial, of one count of possessing ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He was sentenced principally to 96 months' imprisonment. Stroman's conviction arose out of a shooting on March 11, 2009 at a neighborhood grocery store in Brooklyn, New York, during which the suspect discharged a firearm while chasing two individuals in the store, which resulted in no injuries but damage to the glass door of a refrigerated beverage case. On appeal, Stroman argues that the district court (1) committed reversible error in denying his motion to suppress allegedly incriminating statements on the ground that those statements were made in response to the functional equivalent of custodial interrogation under *Miranda v. Arizona*, 384 U.S. 436 (1966) and *Rhode Island v. Innis*, 446 U.S. 291 (1980); (2) improperly admitted a hearsay statement whose probative value was outweighed by the prejudice to the defendant; and (3) imposed a procedurally unreasonable sentence by erroneously finding that Stroman discharged the firearm at his intended victim with the specific intent to kill. We assume the parties' familiarity with the remaining facts and procedural history of the case, which we reference only as necessary to explain our decision.

We turn first to Stroman's claim that his statements were the result of interrogation in violation of *Miranda* and *Innis*. "When reviewing a district court's ruling on a motion to suppress

2

evidence, we review the court's factual findings for clear error, viewing the evidence in the light most favorable to the government," and its "legal conclusions are reviewed *de novo*." *United States v. Worjloh*, 546 F.3d 104, 108 (2d Cir. 2008).

Under *Miranda*, the government may not use any statements "stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. These protections "come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 300-01 (footnote omitted).

On May 13, 2009, Federal Bureau of Investigation ("FBI") agents and New York Police Department officers arrested Stroman at his home with a warrant and brought him to an interrogation room at the 73d Precinct station house. FBI Special Agent Jed Salter advised Stroman that "he was being charged with a crime in connection with a shooting he committed in March." App. 30. Agent Salter told Stroman to remain silent, an instruction that Stroman claimed he understood, and the agent informed Stroman that he would show Stroman video surveillance footage. As Agent Salter began to show Stroman the video, Stroman started to speak, and Agent Salter instructed him to remain silent. Despite the agent's warning, as he watched the video, Stroman repeatedly said "you can't see my face." App. 30. Defense counsel filed a pre-trial motion to suppress Stroman's statements as the product of custodial interrogation. The Government, while conceding that Stroman was in custody at the time and was never given

3

*Miranda* warnings, argued that because Agent Salter had told Stroman to remain silent and showed him the video to educate the defendant about the evidence against him, Stroman's statements were not the result of the functional equivalent of interrogation. The district court denied Stroman's motion to suppress.

On appeal, Stroman argues that, by showing the video to him with the instruction to remain silent, the agents knew that their actions were "reasonably likely to elicit an incriminating response," *Innis*, 446 U.S. at 301. In evaluating whether interrogation has violated the protections afforded by *Miranda*, we must "consider police conduct in light of the totality of the circumstances in assessing whether the police 'should have known' that their actions 'were reasonably likely to elicit an incriminating response.'" *Acosta v. Artuz*, 575 F.3d 177, 191 (2d Cir. 2009) (quoting *Innis*, 446 U.S. at 303). Not all statements by the police regarding the nature and strength of the evidence against a defendant constitute interrogation or its functional equivalent. *See id.* ("[C]ourts have not endorsed the proposition that statements by law enforcement officials to a suspect regarding the nature of the evidence against the suspect constitute interrogation as a matter of law, recognizing that it simply cannot be said that *all* such statements are objectively likely to result in incriminating responses by those in custody." (internal quotation marks and alteration omitted)); *see also United States v. Payne*, 954 F.2d 199, 202 (4th Cir. 1992) ("[T]he *Innis* definition of interrogation is not so broad as to capture within *Miranda*'s reach all declaratory statements by police officers concerning the nature of the charges against the suspect and the evidence relating to those charges."); *Easley v. Frey*, 433 F.3d 969, 974 (7th Cir. 2006) (officer's "matter-of-fact communication of the evidence" against the defendant was not interrogation).

4

Stroman nevertheless argues that, when reviewing the "totality of the circumstances," *Acosta*, 575 F.3d at 191, this Court should conclude that the agents "should have known" that their actions — forcing Stroman to watch a potentially incriminating videotape and requesting that he remain silent — were "reasonably likely to elicit an incriminating response," *Innis*, 446 U.S. at 301. Several courts have asserted that, under certain circumstances, showing evidence to the defendant may be the functional equivalent of custodial interrogation. *See, e.g.*, *United States v. Green*, 541 F.3d 176, 187 (3d Cir.) (holding that showing video allegedly depicting defendant as engaging in a criminal act was reasonably likely to elicit incriminating response), *reh'g granted and vacated*, 304 F. App'x 981, 982 (3d Cir. 2008); *United States v. Collins*, 43 F. App'x 99, 101 (9th Cir. July 30, 2002) (playing audiotape to defendant was likely to elicit incriminating response); *United States v. Lovell*, 317 F. Supp. 2d 663, 669 (W.D. Va. 2004) (concluding that showing rifle to defendant was "functional equivalent" of interrogation). The question thus posed by this case is whether the police conduct was intended to elicit an incriminating response from Stroman before informing him of his *Miranda* rights.

This Court has not had occasion to consider this question, and although the police conduct at issue raises concerns that police may be able to sidestep *Miranda*'s safeguards, we need not determine whether the agents' actions rise to the level of a *Miranda* violation. Assuming *arguendo* that Stroman's statements were the product of interrogation and thus the district court erred in not granting Stroman's motion to suppress, we conclude that it was harmless error to admit those statements at trial. Stroman argues that "there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman v. California*, 386 U.S. 18, 23 (1967) (internal quotation marks omitted). The reasonable possibility standard asks

whether "the minds of an average jury would not have found the [government's] case significantly less persuasive had the testimony . . . been excluded." *Schneble v. Florida*, 405 U.S. 427, 432 (1972) (internal quotation marks omitted). More recently, this Court stated that, according to the Supreme Court,

> the following factors [are] relevant in determining whether the erroneous admission of a confession was harmless error: (1) the overall strength of the prosecution's case; (2) the prosecutor's conduct with respect to the improperly admitted evidence; (3) the importance of the wrongly admitted testimony; and (4) whether such evidence was cumulative of other properly admitted evidence.

*Zappulla v. New York*, 391 F.3d 462, 468 (2d Cir. 2004).

In light of these principles, we conclude that the introduction of Stroman's statements was harmless given the overall strength of the prosecution's case and the weight given to the other evidence. The jury was shown the video surveillance footage and could have made an independent identification of Stroman as the shooter. Moreover, both Cynthia Whitaker, his former girlfriend, who had accompanied Stroman to the store just prior to the shooting incident, and Stroman's former boss identified him as the shooter in the surveillance video. Whitaker further testified that after the store owner informed her that someone had to pay for the broken glass door and she relayed this information to Stroman, he responded by asking her to inquire as to how much the repair would cost. During its summation, the Government emphasized Whitaker's testimony, asserting that the jury could render a guilty verdict based solely on Whitaker's identification of Stroman as the shooter. To be sure, the Government also placed emphasis on Stroman's false exculpatory statements, arguing that those statements constituted admissions by Stroman that he was the person in the video. That factor supports a conclusion that if that evidence was admitted erroneously, the error was not harmless. *See, e.g.*, *Zappulla*, 391 F.3d at 471-72. We nonetheless

6

conclude that the evidence of guilt here was "so overwhelming" that the "minds of an average jury would not have found the State's case significantly less persuasive" in the absence of Stroman's allegedly incriminating statements. *Schneble*, 405 U.S. at 432; *see also Medina v. Keane*, 936 F.2d 681, 683-84 (2d Cir. 1991) (holding that the government had proven its case beyond a reasonable doubt notwithstanding an improperly obtained post-arrest statement and therefore the statement's admission was harmless error).

We turn next to Stroman's challenge to the admission of a hearsay statement. Whitaker testified that the store owner told her "the one you was in the store with earlier, he broke my glass and somebody has to pay for it." App. 137. Defense counsel objected on grounds of hearsay, but the district court admitted the statement and gave a limiting instruction to the jury that the statement was not being offered for the truth of its content but for the mere fact of having been said to Whitaker. On appeal, Stroman argues that the statement should have been excluded on the ground that the statement was likely viewed by the jury as an out-of-court identification of Stroman as the shooter because "the jury [was] likely to consider the statement for the truth of what was stated with significant resultant prejudice." *United States v. Forrester*, 60 F.3d 52, 59 (2d Cir. 1995) (internal quotation mark omitted); *see also United States v. Tussa*, 816 F.2d 58, 66 (2d Cir. 1987) (finding limiting instruction insufficient to prevent error where the hearsay use went to a highly material issue in the case). Nevertheless, we conclude that admission of the statement was harmless in light of the aforementioned witness identifications of Stroman as the shooter and Stroman's own inquiry into the cost of the glass repair. *See Forrester*, 60 F.3d at 64 ("Error is harmless if it is highly probable that it did not contribute to the verdict." (internal quotation marks omitted)).

7

Finally, we turn to Stroman's challenge to the procedural reasonableness of his sentence. Review of a district court's sentence for procedural reasonableness focuses on whether the district court committed a "'significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.'" *United States v. Dorvee*, 616 F.3d 174, 179 (2d Cir. 2010) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). We review the district court's factual findings for clear error. *See* 18 U.S.C. § 3742(e).

The Presentence Investigation Report identifies the applicable guideline under the United States Sentencing Guidelines for the crime of possessing a firearm or ammunition as a felon, in violation of 18 U.S.C. § 922(g)(1), as section 2K2.1. It notes that if the defendant uses ammunition or a firearm in connection with another offense, then the district court, pursuant to section 2X1.1, is to apply "[t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." U.S.S.G. § 2X1.1(a). In calculating the Guidelines range for Stroman's sentence, the district court, over the objections of defense counsel, applied the guideline for second-degree murder, section 2A2.1(a)(2), which gives a base offense level of 27 and resulted in a sentencing range of 78 to 97 months.

On appeal, Stroman argues that it was clearly erroneous for the district court to conclude that Stroman had the specific intent to kill necessary to justify imposition of the base offense level for second-degree murder under section 2A2.1(a)(2). The Supreme Court has held that "[a]lthough a murder may be committed without an intent to kill, an *attempt* to commit murder

8

requires a specific intent to kill." *Braxton v. United States*, 500 U.S. 344, 351 n.* (1991) (internal quotation marks omitted) (emphasis supplied); *see also United States v. Kwong*, 14 F.3d 189, 194 (2d Cir. 1994) (requiring specific intent to kill to convict for attempted murder). Therefore, the district court must have concluded, by a preponderance of the evidence, that Stroman actually attempted or intended to kill his victim. The district court found that Stroman had deliberately fired his weapon:

> [l]ooking at that videotape, it was obvious Mr. Stroman was running into this bodega for the very specific purpose of shooting whoever it was he was aiming his gun at and had he hit him, he might very well have killed him. So, that was not an accident. It wasn't a fortuitous event. It was obviously something he clearly intended to do.
>
> You don't run into a bodega, running after somebody, pointing a gun at him and shooting at him, unless this is something you intended to do. I have no difficulty with that.

App. 328.

This statement does not directly address whether Stroman intended to kill his victim. Although the district court further stated that it "look[ed] like" Stroman was "attempt[ing] to kill someone," *id.* at 341, this statement does not support a finding of specific intent, and therefore we conclude that the district court committed procedural error. Accordingly, we vacate Stroman's sentence and remand the case to the district court for resentencing.

We have considered Stroman's remaining arguments and find them to be without merit. Accordingly, for the foregoing reasons, Stroman's conviction is **AFFIRMED** and the district court's sentence is **VACATED** and **REMANDED** for further proceedings consistent with this order.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

9